**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| KELLY BRYAN-THARPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV00272 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kelly Bryan-Tharpe, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Memorandum), Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of August 6, 2008. (Tr. 240-44.) Upon denial of that application initially (Tr. 81-100, 138-46) and on reconsideration (Tr. 101-23, 147-54), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 163). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 32-60.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-27.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 215-18) and modified the ALJ's decision by adding the requirement that Plaintiff needed a cane for walking and standing to the RFC determination but concluded that she remained capable of performing other available work (Tr. 1-9), thus making the ALJ's ruling, as modified by the Appeals Council, the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] last met the insured status requirements of the [] Act on March 31, 2012.

2.   [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of August 6, 2008, through her date last insured of March 31, 2012.

3.   Through the date last insured, [Plaintiff] had the following severe impairments: fibromyalgia; obesity; degenerative joint disease of the knee; and bipolar disorder.

. . .

4.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

2

5.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . . in that [Plaintiff] could occasionally lift or carry up to 10 pounds, frequently lift or carry up to five pounds as well as stand/walk for about two hours out of an eight-hour workday and sit for about six hours out of an eight-hour workday. [Plaintiff] could also perform occasional postural activities.  She could perform simple, routine, repetitive tasks in a non-production environment.

. . .

6.   Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from August 6, 2008, the alleged onset date, through March 31, 2012, the date last insured.

(Tr. 15-26 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ and Appeals Council erred in failing to account for [Plaintiff's] limitations in concentration, persistence, and pace in the [RFC] finding" (Docket Entry 10 at 4); and

(2) "[t]he ALJ and Appeals Council erred in failing to adequately explain the weight assigned to the opinion of [Plaintiff's] treating physician" (id. at 6).

Defendant disputes all of Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability.  (See Docket Entry 12 at 3-13.)

### 1. Concentration, Persistence, or Pace

Plaintiff first contends that the ALJ and Appeals Council failed to account in the mental RFC determination for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") in violation of Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).  (See Docket Entry 10 at 4-6.)  Specifically, Plaintiff maintains that, under Mascio, a restriction to "simple, routine tasks or unskilled work" does not account for moderate limitation in CPP because "the ability to perform simple tasks differs from

---

[4] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

the ability to stay on task" and only the latter limitation "would account for a claimant's limitation in [CPP]." (Id. at 5 (quoting Mascio, 780 F.3d at 638).) Plaintiff further asserts that Mascio dictates that an ALJ must explain how a "claimant can perform work-related functions . . . 'for a full workday.'" (Id. (quoting Mascio 780 F.3d at 637).) According to Plaintiff, the ALJ's restriction to "'simple, routine, repetitive tasks in a non-production environment' addresses an individual's limitation in handling the complexity and stress of various types of work and workplace surroundings (i.e. environment)" but "does not address an individual's capacity to maintain [CPP]." (Id. at 5-6; see also Tr. 17.) Plaintiff's first assignment of error fails to warrant relief.

The Mascio court did expressly hold that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. In this case, however, the ALJ did not fail to include a restriction reasonably related to a moderate limitation in Plaintiff's ability to stay on task; to the contrary, as quoted above, the ALJ explicitly included a restriction to a job "in a non-production environment." (Tr. 17.)

Following Mascio, federal district courts in the Fourth Circuit have split on whether a restriction to non-production work

adequately accounts for moderate limitation in CPP. Compare Wilson v. Colvin, No. 2:14-cv-3209-TLW-MGB, 2016 WL 625088, at *5 (D.S.C. Jan. 15, 2016) (unpublished) (holding restriction to "non-production work, no assembly line production, or high speed manner, . . . [s]tanding alone, . . . does not account for a limitation in [CPP]"), recommendation adopted, 2016 WL 613891 (D.S.C. Feb. 16, 2016) (unpublished), Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) (unpublished) (deeming "work in a low production occupation . . . which would require no complex decision making, constant change or dealing with crisis situations" insufficient to account for moderate limitation in CPP), and Franklin v. Colvin, No. 5:14-cv-84, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015) (unpublished) (concluding ALJ must "directly explain" how restriction of "production/ assembly-line/high-speed work or contact with the public is a proper accounting for [the claimant's] limitations in [CPP]"), with Hill v. Colvin, Civ. No. DKC 15-1027, 2016 WL 3181762, at *8 (D. Md. June 8, 2016) (unpublished) (finding limitation to "no production rate or piece work" accounted for the plaintiff's moderate difficulties in CPP and collecting cases), Parker v. Colvin, No. 3:14cv502, 2015 WL 5793695, at *23 (E.D. Va. Sept. 29, 2015) (unpublished) (deciding RFC containing restriction to "non-production oriented work setting with no public interaction and limited interaction with co-workers and supervisors . . .

10

appropriately considered [the plaintiff's] moderate limitations in [CPP]"), and Linares v. Colvin, No. 5:14-CV-00120, at *4 (W.D.N.C. July 17, 2015) (unpublished) (holding Mascio distinguishable because ALJ restricted the plaintiff to "a stable work environment at a nonproduction pace with only occasional public contact" which "specifically addressed [the plaintiff's] ability to stay on task as required by Mascio").

Within the Middle District of North Carolina, cases interpreting this aspect of Mascio have reached differing results. For example, in Pulliam v. Colvin, No. 1:13CV176, 2016 WL 843307 (M.D.N.C. Mar. 1, 2016) (unpublished) (Osteen, C.J.), the Court reviewed under Mascio a moderate limitation in CPP in the context of an RFC limiting the claimant "to simple, routine, repetitive tasks in a non-production and non-quota based environment," along with restrictions on interaction with others and an express finding that the claimant "could maintain focus throughout the day." Id. at *1-2. Although the Court concluded that the ALJ "failed to explain why the moderate limitations in [CPP] . . . did not translate to a limitation in the RFC assessment," id. at 5, the Court did not expressly address the effect of the non-production/non-quota restriction (see id. at 5-7) and, in fact, noted that the question squarely presented in this case remains open: "a number of post-Mascio cases stat[e] that a . . . limitation to simple, routine, repetitive tasks in a low production

11

and/or socially isolated environment <u>may</u> be, without more, insufficient to account for moderate limitations in [CPP]" <u>id.</u> at *5 n.7 (emphasis added).

Similarly, in <u>Manns v. Colvin</u>, No. 1:15-CV-133, 2015 WL 5821245 (M.D.N.C. Oct. 5, 2015) (unpublished) (Eagles, J.), the Court considered a mental RFC which included restrictions to low-stress work with only occasional decision-making and changes, and no work at a production rate or pace. <u>Id.</u> at 1. The Court found that, given the significant record evidence of the claimant's difficulties in CPP, the ALJ had failed to adequately explain "how the mental RFC she found adequately encompasses Ms. Manns' undisputed limitations in [CPP]." <u>Id.</u> at 3. Again, however, the Court did not specifically analyze whether a non-production restriction sufficiently addresses moderate deficits in CPP. <u>See id.</u> at 1-3.

In another case, <u>Cummings v. Colvin</u>, No. 1:14CV465, 2016 WL 792433 (M.D.N.C. Feb. 26, 2016) (unpublished) (Peake, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, C.J.), the Court concluded that, "[a]lthough there is a limitation to a 'non-production environment,' neither the ALJ's decision, nor the state agency physician's report which the ALJ credits, links [the plaintiff's] difficulties in [CPP] to the non-production limitation or to any other aspect of the RFC" and that "the record does not appear to provide the 'logical bridge' necessary for this

12

Court to find that the RFC adequately takes into account [the plaintiff's] moderate difficulties in [CPP]." Id. at 4; see also Burrow v. Colvin, No. 1:15CV163, 2016 WL 1258840, at *4-5 (M.D.N.C. Mar. 28, 2016) (unpublished) (Webster, M.J.) (citing Cummings and finding, under facts of case, restriction to non-production environment and constraints on social interactions did not account for the plaintiff's moderate difficulties in CPP). However, in Massey v. Colvin, No. 1:13CV965, 2014 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 13, 2015) (Schroeder, J.), the Court distinguished Mascio and concluded that a restriction to a non-production oriented job, along with limitations on noise and contact with others, "properly captured" the plaintiff's moderate limitation in CPP. Id.

The Fourth Circuit has not yet had an occasion, post-Mascio, to address whether a restriction to non-production work sufficiently accounts for a moderate limitation in CPP. However, in reaching its conclusion in Mascio that a restriction to "simple, routine tasks or unskilled work" did not adequately address moderate deficits in CPP, the Fourth Circuit expressly relied on the Eleventh Circuit's decision in Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011). Mascio, 780 F.3d at 638 ("[W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in [CPP] by restricting the hypothetical

question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)."). As the quotation above makes clear, the Winschel court, in turn, relied upon decisions from the Third, Seventh, and Eighth Circuits. Winschel, 631 F.3d at 1180 (citing Stewart v. Astrue, 561 F.3d 679, 684–85 (7th Cir. 2009), Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), and Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)). Thus, a review of how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC informs the undersigned Magistrate Judge's understanding of how the Fourth Circuit likely would rule on such an issue.

In Ramirez, on which the Winschel court relied, the Third Circuit held that restrictions to "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls" did "not adequately encompass a finding that [the plaintiff] often has deficiencies in [CPP]." Ramirez, 372 F.3d at 554 (emphasis added). However, the mental RFC in that case did not include a restriction to non-production work and, in fact, the court expressly noted the VE's testimony that all three jobs cited as suitable for the plaintiff had daily production quotas. Id. Moreover, in a subsequent Third Circuit case, Russo v. Astrue, 421 F. App'x 184

14

(3d Cir. 2011), the court held that a hypothetical which precluded
"a quota to fulfill . . . account[ed] for [the plaintiff's]
moderate difficulties with [CPP]." Id. at 192 (emphasis added).
Since Russo, district courts in the Third Circuit not only have
followed Russo, see, e.g., Bacon v. Colvin, Civ. No. 12-1477-GMS,
2016 WL 556727, at *10 (D. Del. Feb. 12, 2016) (unpublished), but
also have questioned the continuing validity of Ramirez on the CPP
issue in question, see, e.g., Rodgers v. Colvin, Civ. No. 13-75-J,
2014 WL 4748907, at *1 n.1 (W.D. Pa. Sept. 24, 2014) (unpublished)
("[T]he Social Security regulations pertaining to mental
impairments were revised, and the evaluation of [CPP] was changed
from a five-point scale based on the frequency of the deficiencies
to the current five-point severity scale. Although both 'often'
and 'moderate' occupy the middle position in their respective
scales, more recent Third Circuit decisions have distinguished
Ramirez based on the difference between 'often' suffering from
these deficiencies and being 'moderately' limited in those areas.
The continuing validity of Ramirez under the new severity scale,
therefore, is questionable." (internal citations omitted)).

     As discussed above, the Winschel court also explicitly relied
on the Seventh Circuit's holding that restrictions to simple,
routine tasks with no constant interaction with others did not
suffice for claimants with moderate limitation in CPP, Stewart, 561
F.3d at 684-85. However, like Ramirez, Stewart did not involve a

mental RFC that included a restriction to non-production work, id.;
see also Ramirez, 372 F.3d at 554. Moreover, Stewart cited a Sixth
Circuit case, Smith v. Halter, 307 F.3d 377, 380 (6th Cir. 2001),
which found that precluding production quotas adequately accounted
for moderate limitation in CPP, see Stewart, 561 F.3d at 685.
Further, subsequent to Stewart, the Seventh Circuit concluded that
"the ALJ captured [the plaintiff's] moderate limitation in [CPP]
when he included a restriction of 'no high production goals.'"
Seamon v. Astrue, 364 F. App'x 243, 248 (7th Cir. 2010) (citing
Arnold v. Barnhart, 473 F.3d 816, 820 (7th Cir. 2007)); see also
Grasso v. Colvin, Civ. No. 13-C-0112, 2013 WL 4046338, at *14 (E.D.
Wis. Aug. 8, 2013) (unpublished) (finding restrictions to limited
changes and decision-making and no production quotas accommodated
moderate limitation in CPP); Muenzenberger v. Colvin, Civ. No. 12-
C-138, 2013 WL 3305546, at *12 (W.D. Wis. July 1, 2013)
(unpublished) (holding "a non-noisy environment and . . . tasks not
requiring a rapid pace" captured moderate limitation in CPP).

More recently, the Seventh Circuit held, without
distinguishing Seamon, that a restriction to work "free of fast
paced production requirements" did not account for the plaintiff's
moderate deficits in CPP, because the ALJ failed to define "fast
paced production." Varga v. Colvin, 794 F.3d 809, 815 (7th Cir.
2015). Thus, the holding in Varga, when considered in conjunction
with the holdings in Seamon and Stewart, suggests the Seventh

16

Circuit would find that production-related restrictions properly account for a moderate limitation in CPP, at least where the production-related restriction appears sufficiently clear.

As described above, the Winschel court (and, in turn, the Mascio court) also relied on an Eighth Circuit decision, which held that a restriction to "simple jobs" did not adequately address the limitations of an individual who "often" suffered difficulties in CPP, Newton, 92 F.3d at 695. However, the Newton court did not consider whether a restriction to non-production work would sufficiently account for moderate limitation in CPP. See id. Moreover, just over a year later, the Eighth Circuit concluded that a restriction to jobs that did "not require close attention to detail" or "work at more than a regular pace" sufficiently encompassed the limitation of a person who "often" had deficiencies in CPP. Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997).[5] Since Brachtel, district courts within the Eighth Circuit repeatedly have concluded that restrictions to non-production work adequately account for moderate limitation in CPP. See, e.g., Henderson v. Colvin, Civ. No. C 15-2057, 2016 WL 2894915, at *9 (N.D. Iowa May 17, 2016) (unpublished) (concluding limitation to "work performed at a regular pace" encompassed moderate deficits in

---

[5] Subsequent to Brachtel, the Eighth Circuit moved even further away from its holding in Newton, and found that a mere restriction to simple, routine, repetitive tasks adequately accounted for moderate limitation in CPP. See Howard v. Massanari, 255 F.3d 577, 581-82 (8th Cir. 2001).

CPP); <u>Gibson v. Colvin</u>, No. 14-1023-CV-C-DGK, 2016 WL 1090650, at *4 (W.D. Mo. Mar. 21, 2016) (unpublished) (finding restriction to "a work environment free of fast-paced production requirements" sufficiently accounted for moderate limitation in CPP); <u>Burks v. Colvin</u>, No. 4:14-CV-01121-DGK-SSA, 2016 WL 316869, at *5 (W.D. Mo. Jan. 26, 2016) (unpublished) (deeming preclusion of "strict production quota[s] with the emphasis being on a per shift rather than a per hour basis" adequate to address moderate limitation in CPP); <u>but see</u> <u>Meyer v. Colvin</u>, No. 1:15-cv-00006-JAR, 2016 WL 949526, at *6 (E.D. Mo. Mar. 14, 2016) (unpublished) (holding that restriction of "high production-rate jobs, <u>although low and medium production-rate jobs would be acceptable</u>" did not account for moderate limitation in CPP (emphasis added)).

Lastly, it appears that the Eleventh Circuit has not addressed a non-production restriction since <u>Winschel</u>, but that district courts within the Eleventh Circuit (although split) more often have found such restrictions adequate to account for moderate limitation in CPP. <u>Compare</u> <u>Adams v. Commissioner</u>, No. 6:13-cv-1599-Orl-DAB, 2015 WL 1020559, at *5 (M.D. Fla. Mar. 6, 2015) (unpublished) (deeming preclusion of "assembly lines or production quotas" insufficient to account for moderate difficulties in CPP because ALJ did not cite to any medical evidence to support mental RFC), <u>with</u> <u>Jackson v. Colvin</u>, No. 1:14-cv-01868-AJB, 2015 WL 5601876, at *14 (N.D. Ga. Sept. 23, 2015) (unpublished) (concluding restriction

18

"to work that is low stress and . . . not production paced"
accounted for moderate limitation in CPP), Hicks v. Colvin, No.
1:12-cv-1663-JEC, 2014 WL 3573732, at *10-11 (N.D. Ga. July 21,
2014) (unpublished) (deciding that prohibition of "fast-paced work"
sufficiently addressed moderate difficulties in CPP), and Allen v.
Colvin, No. 1:11-cv-197-MW/CJK, 2013 WL 5188311, at *9 (N.D. Fla.
Sept. 13, 2013) (unpublished) (determining restriction to "low
stress (non-production oriented), simple work" accommodated
moderate limitation in CPP (internal brackets omitted)).

In summary, the weight of authority in the circuits that
rendered the rulings undergirding the Fourth Circuit's holding in
Mascio supports the view that the non-production restriction
adopted in this case sufficiently accounts for Plaintiff's moderate
limitation in CPP. Moreover, that approach makes sense. In
Mascio, the Fourth Circuit held only that, when an ALJ finds
moderate limitation in CPP, the ALJ must either adopt a restriction
that addresses the "staying on task" aspect of CPP-related deficits
(which a restriction to simple tasks does not, at least on its
face) or explain why the CPP limitation of that particular claimant
did not necessitate a further restriction regarding "staying on
task." Where, as here, the ALJ has included a specific restriction
that facially addresses "moderate" (not "marked" or "extreme," see
20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to

19

stay on task, i.e., a restriction to non-production work,[6] <u>Mascio</u> does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

Thus, Plaintiff's first assignment of error fails to entitle her to relief.

## 2. Treating Physician's Opinion

Next, Plaintiff asserts that the ALJ and Appeals Council failed to sufficiently explain the basis for rejecting the opinions of Plaintiff's treating physician, Dr. Sharon S. Rubin. (<u>See</u> Docket Entry 10 at 6-11.) In particular, Plaintiff challenges the ALJ's explanation that Dr. Rubin's opinions lacked consistency with her own treatment records, and faults the ALJ for failing to cite "any of the supposed contradictory findings and observations in Dr. Rubin's notes." (<u>Id.</u> at 9.) Moreover, Plaintiff contests "[t]he ALJ's only other rationale for rejecting Dr. Rubin's opinion[s]," that such opinions lack consistency with Plaintiff's statements that she walked her dogs and exercised on a treadmill, because finding Dr. Rubin "not credible due to the fact that [Plaintiff] [is] engaging in very limited, prescribed exercise activity designed to improve her overall health . . . is absurd and

---

[6] Notably, the ALJ's hypothetical question to the VE provided further clarification of the non-production restriction in that it precluded "production work or other similar fast-pace jobs with deadlines and quotas." (Tr. 57.)

tolerance of such reasoning is bad policy from a public health standpoint." (Id.) According to Plaintiff, other medical evidence of record supports Dr. Rubin's opinions, including a consultative examination conducted by Dr. Amanda Lam and x-rays of Plaintiff's knees. (Id. (citing Tr. 578, 625, 644).) These assertions fall short.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 404.1527(c)(2)-(4).

"[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added). Here, the ALJ's evaluation of Dr. Rubin's opinions comports with the above-cited regulations and Craig.

Dr. Rubin completed a form entitled "Physical [RFC] Questionnaire" on May 20, 2011, on which she indicated that Plaintiff suffered from depression, obesity, and fibromyalgia characterized by constant, severe neck and back pain, fatigue, decreased energy, and insomnia. (See Tr. 581.) According to Dr. Rubin, Plaintiff's pain "[c]onstantly" remained "severe enough to interfere with attention and concentration needed to perform even simple work tasks," and Plaintiff could not perform "even 'low stress' jobs." (Tr. 582 (bold font omitted).) As a result of Plaintiff's impairments, Dr. Rubin opined that Plaintiff could sit for five minutes at a time and for fewer than two hours total in an eight-hour work day, could stand for five minutes at a time and stand/walk for fewer than two hours total in a work day, and would need to shift positions at will and walk for five minutes every five minutes. (See Tr. 583-84.)[7] Additionally, Dr. Rubin predicted that Plaintiff would need to take five-minute unscheduled

---

[7] Dr. Rubin's opinions regarding Plaintiff's ability to walk contradict each other. Although Dr. Rubin limited Plaintiff to fewer than two hours of walking in an eight-hour work day, she also opined that Plaintiff needed to walk for five minutes every five minutes, which translates to four hours of walking in an eight-hour work day. (See Tr. 583-84.)

22

breaks once per hour, would need to use a cane or other assistive device for standing and walking, could rarely lift fewer than 10 pounds (and never more than that), twist, or stoop, and could never crouch, squat, or climb. (See Tr. 584-85.) Dr. Rubin estimated that Plaintiff's impairments would cause her absence from work more than four days per month (see Tr. 585), and concluded that, as of January 14, 2011, Plaintiff could not perform "a full-time work schedule at any level of exertion," (Tr. 586.)

The ALJ thoroughly described Dr. Rubin's opinions on the Questionnaire as follows:

> Sharon Rubin, M.D. filled out a Physical [RFC] Questionnaire for [Plaintiff] in May of 2011 that indicated that [Dr. Rubin] had been seeing [Plaintiff] since July of 2009 every four to six months and that she was diagnosed with depression, obesity, and fibromyalgia all with stable prognoses. Her symptoms were listed as abdominal pain, diarrhea, urinary frequency, dysuria, yeast infections, fatigue, a decrease in energy, nausea, and insomnia. She indicated that her pain was constant and located in her back and neck and that it was worse with walking and movement. [Plaintiff] was identified as being morbidly obese as well.
>
> It was noted that emotional factors such as depression contributed to the severity of [Plaintiff's] symptoms and functional limitations and that her pain or other symptoms would be severe enough to interfere with her attention and concentration needed to perform even simple work tasks on a constant basis and that she would be incapable of even low stress jobs. The questionnaire indicated that [Plaintiff] could walk less than one city block without rest or severe pain and that she could sit for 0-5 minutes at one time before needing to get up. It also noted that she could sit, stand, and walk less than two hours in an eight-hour workday and would need periods of walking around every five minutes for five minutes each time.

[Plaintiff] would require a job that permitted shifting positions at will from sitting, standing, or walking and sometimes need to take unscheduled breaks during the eight-hour workday about every hour for about five minutes before returning to work. With prolonged sitting, her legs would not have to be elevated, but while engaging in occasional standing and walking, she would need a cane or other assistive device. [Plaintiff] could rarely lift or carry less than 10 pounds and never over that in a competitive work situation. She could occasionally look down, turn her head form left to right, look up, and hold her head in a static position. [Plaintiff] could rarely twist, bend, or stoop and never crouch, squat, climb ladders, or climb stairs. She did not have any significant limitations with reaching, handling, or fingering.

Dr. Rubin indicated that [Plaintiff's] impairments were likely to produce good days and bad days and that she would likely be absent from work as a result of her impairments or treatment more than four days per month. She indicated that in her expert opinion, [Plaintiff] was not capable of working a full-time work schedule at any level of exertion, eight hours per day, five days per week.

(Tr. 20.) The ALJ then provided the following explanation for affording "little weight" to Dr. Rubin's opinions:

This opinion is being afforded little weight by the undersigned because it is inconsistent with the doctor's own medical records <u>that all of [Plaintiff's] extremities moved well, she had a normal gait and was well-appearing</u>. The opinion and it[]s limitations are also inconsistent with [Plaintiff's] own statements that as late as April of 2013, she had been walking her dogs every day, exercising on the treadmill, and working a lot.

(<u>Id.</u> (emphasis added).)

As shown by the emphasized portion of the ALJ's analysis (and contrary to Plaintiff's argument (<u>see</u> Docket Entry 11 at 9)), the ALJ did specify the inconsistencies between Dr. Rubin's findings on examination and her opinions on the Questionnaire. Moreover,

elsewhere in his decision, the ALJ discussed some of Dr. Rubin's other observations that lacked consistency with her extreme limitations on the Questionnaire. For example, the ALJ noted Dr. Rubin's remarks that Cymbalta resulted in improvement in Plaintiff's depression and clarity (see Tr. 19; see also Tr. 697, 703), that the Flector patch constituted the best pain control for Plaintiff's left knee osteoarthritis and that Plaintiff reported being able to "hop up the stairs with no pain" (id.; see also Tr. 607), and that Plaintiff's "physical examination was within normal limits except for some crepitus in the left and right knee" (id.). Thus, the ALJ's evaluation sufficiently explains the basis for his conclusion that Dr. Rubin's opinions lacked consistency with her own treatment records.

Plaintiff's attack on the ALJ's decision to discount Dr. Rubin's opinions as inconsistent with Plaintiff's statements regarding exercise similarly misses the mark. Dr. Rubin opined that Plaintiff's impairments caused her to suffer extreme limitation on her ability to walk, such as inability to walk a city block without rest or severe pain, inability to walk even two hours total in eight-hour work day, and the need to use a cane or other assistive device when walking or standing. (See Tr. 583–84.)[8]

---

[8] Dr. Rubin signed the Questionnaire on May 20, 2011 (Tr. 586), approximately five months prior to Plaintiff's November 1, 2011 motor vehicle accident in which she fractured her left lower leg and suffered lacerations on her left ankle (see Tr. 544-74). In light of Plaintiff's testimony that her treating orthopedist, Dr. Olson, prescribed her cane in February 2012 (see Tr. 43), which harmonizes

(continued...)

25

Plaintiff's statements to Dr. Rubin in March and April 2013 that Plaintiff "walks with dogs every day," that she "ha[d] been working a lot" as a pet sitter, and had been "exercising more" (see Tr. 697, 703) call into question the validity of Dr. Rubin's extreme restrictions on Plaintiff's ability to walk. The regulations require the ALJ to consider the consistency of the treating physician's opinions with the record, see 20 C.F.R. § 404.1527(c), and thus the ALJ did not err in relying, in part, on the inconsistency between Dr. Rubin's opinions and Plaintiff's statements regarding her level of physical activity.

Finally, Plaintiff's assertion that Dr. Lam's findings and certain knee x-rays provide support for Dr. Rubin's opinions falls short. Plaintiff argues that Dr. Lam "noted upon examination that [Plaintiff] had 16 out of 18 tender trigger points and had decreased strength in the bilateral knees." (Docket Entry 11 at 8-9 (citing Tr. 578).) However, the presence of trigger points merely supports Plaintiff's diagnosis of fibromyalgia, and does not provide support for any specific functional limitations arising out of her fibromyalgia. Moreover, Dr. Lam's finding of mildly decreased strength in Plaintiff's knees and left ankle (4/5) in the aftermath of Plaintiff's motor vehicle accident which fractured

---

[8] (...continued)
with consultative examiner Dr. Amanda Lam's observation on February 17, 2012 that Plaintiff "[wa]s partial weight bearing with [a] cane" following her accident (Tr. 576), the basis for Dr. Rubin's May 2011 opinion that Plaintiff required a cane to stand and walk remains unclear.

Plaintiff's left lower leg (accompanied by Dr. Lam's prediction that Plaintiff might experience only moderate impairment of her ability to walk when fully healed) (<u>see</u> Tr. 578) does not bolster Dr. Rubin's pre-accident opinions assigning extreme limitations on sitting, standing, and walking. Lastly, although Plaintiff points to post-accident knee x-rays showing moderate to severe joint space narrowing (<u>see</u> Tr. 625, 644), such findings support Plaintiff's osteoarthritis diagnosis but do not lend any credence to Dr. Rubin's significant, pre-accident functional restrictions.

Simply put, Plaintiff's contentions of error do not require remand.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 29, 2016